E. O. HALL & SON, a Corporation, Plaintiff, *vs.* WILDER STEAMSHIP CO., a Corporation, Defendant.

QUESTION RESERVED.

HEARING, MARCH 23, 1893.          DECISION, APRIL 22, 1893.

BICKERTON AND FREAR, JJ., AND COOPER, CIRCUIT JUDGE.

(Chief Justice Judd being disqualified by reason of being a stockholder in defendant corporation, Circuit Judge Cooper heard the case in his stead.)

A common carrier by sea accepted goods which were directed to an inland point upon a marine bill of lading. Held : that the exemptions from loss contained in the bill were limited to a loss at sea.

OPINION OF THE COURT, BY COOPER, JUDGE.

This is one of three cases which came before this Court on questions reserved by Circuit Judge Whiting. This case differs in several respects from the others, and for that reason is considered separately.

The question reserved is as follows: Is the exemption from liability for loss by fire provided for by the annexed receipt, marked Exhibit "A," limited to a loss occurring at sea, or does it attach to the whole distance therein named?

Exhibit "A" is as follows:

HONOLULU, July 14, 1891.

Received from Hall & Son in apparent good order on board the Likelike, the following packages, contents unknown, to be delivered in like good order at. . . . . . . . . . . . . ., dangers from fire, explosion, collision, accident and damages of the sea excepted.

It is expressly understood and agreed that the. . . . . . . . . .

company is not accountable for unavoidable delay or detention; that said goods may be landed at any time during the voyage out or return, or so soon thereafter as practicable; and that said goods shall be considered as delivered to the consignee when placed on the wharf or landing above mentioned, and the risk of said company thereby terminated.

Live stock, all perishable goods, glass, crockery, or articles contained in glass or crockery, castings, or any article of a fragile nature, taken only at risk of shipper, owner or consignee, and will not be responsible for moneys or jewels unless placed in charge of the freight clerk.

```
T. Y., Makawao—10 cs. oil........................ $2 50
                 2 bd. buckets...................  1 00
M (in diamond) Waihee—1 bd. pipes 30............
P. P., Paia—1 plow 48...........................
            1 cs. mdse 25.......................
```

(Signed)                                    C. APANA.

Such instruments are both receipts and contracts. So far as they acknowledge the delivery and acceptance of the goods they are mere receipts. As to the rest they are contracts. Hutchinson on Carriers, Section 122.

It will be noticed that the name of the place to which the goods were to be carried was not marked in the blank space left for that purpose, but the marks and destination of the goods were noted at the foot of the bill of lading. Without considering whether this is a sufficient memorandum to hold the defendant liable for loss beyond its own route, we think it does show the place to which the goods were intended to be conveyed, as well as if inserted in the space above.

The Court takes judicial notice of the fact that Paia, Makawao and Waihee are inland points, and consequently not reached by defendant's steamers.

Dangers from fire, explosion, collision, and accident, might exist on the land as well as the sea, and were it not for a clause which follows in the bill of lading where it is agreed "that said goods shall be considered as delivered to con-

signee when placed on the wharf or landing above mentioned, and the risk of said company thereby terminated," it might well be considered as extending the exemption over both the land and sea route. No evidence comes before us and it devolves upon the Court to construe the document as it stands unaided by custom or usage. Webster defines the word landing as "a place for going or setting on shore," and a wharf "as a perpendicular bank or mound of timber or stone and earth raised on the shore of a harbor or river." In interpreting written instruments we must presume that words have been used in their natural and ordinary meaning unless clear intention to use them in another sense can be gathered from the entire instrument. Aside from the establishment of general principles but little aid can be derived from decided causes in determining the construction of documents, as nearly every case has its individual peculiarities.

Upon reading the bill of lading as a whole it is evident that it was originally intended to provide against marine loss.

The acceptance of goods directed to a place beyond the terminus of defendant's route and to an inland point, and the noting of the memorandum of the marks and destination was an attempt to change the form of the bill of lading, and it was within the power of the defendant to so change its tenor that the exemptions should apply to the land as well as the sea route.

We are of the opinion that it is in effect a marine bill of lading and that the attempt to change it into a joint marine and inland bill was ineffectual so far as the limitation of liability was concerned, and that the exemption from liability for loss is limited to a loss at sea.

In accordance with the stipulation filed in this case, judgment may be entered for the plaintiff.

*A. S. Hartwell*, for plaintiff.

*F. M. Hatch*, for defendant.